SH:WMP
F.#2008R00802

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

SECURITIES AND EXCHANGE COMMISSION,

               Plaintiff,

  - against -                    08 CV 3900 (JG)

KENNETH SUAREZ, et al.,

               Defendants.

- - - - - - - - - - - - - - - - - -X

GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION TO INTERVENE AND TO STAY CIVIL PROCEEDINGS

                          BENTON J. CAMPBELL
                          United States Attorney
                          Eastern District of New York
                          271 Cadman Plaza East
                          Brooklyn, New York 11201

WINSTON M. PAES
Assistant U.S. Attorney
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion to intervene in the above-captioned civil case (the "Civil Case") and to stay civil proceedings because of the pendency of a parallel criminal case, <u>United States v. KENNETH SUAREZ and GILBERT BEITAL</u>, 08 CR 337 (JG) (the "Criminal Case"), which has been filed in this district and pending with the Court, and a related, ongoing grand jury investigation. The same underlying facts are at issue in both the civil and the criminal matters. All of the defendants in the Civil Case have no objection to the entry of the requested order staying proceedings of the Civil Case. In addition, the government has consulted with the United States Securities and Exchange Commission ("SEC"), which takes no position on the matter.

A stay of proceedings is necessary in the Civil Case to preserve the secrecy of the ongoing grand jury proceedings. Additionally, it is necessary to prevent the broad civil discovery from circumventing the more limited discovery that will be available to defendants who have been or will be indicted in the Criminal Case. Moreover, a stay of the civil proceedings herein could promote judicial economy since two of the four individual civil defendants have already been indicted and pleaded guilty in the parallel Criminal Case. Accordingly, the

United States respectfully requests that the Court: (1) permit the government to intervene pursuant to Federal Rule of Civil Procedure 24 and (2) order, pursuant to the Court's inherent power, that civil proceedings in the Civil Case be stayed until the conclusion of the related criminal matters.

FACTUAL BACKGROUND

A. The Fraudulent Scheme

The SEC has alleged that over a period of nearly four years, from 2000 through 2004, Kenneth Suarez, Kevin King, Ronald Garcia, Gilbert Beital, Independent Investor Services, Inc. ("Independent Investors"), and Gilcar Securities of Florida, Inc. ("Gilcar") (collectively, the "Civil Defendants") engaged in corrupt practices in the stock-loan industry.

1. Securities Lending and the Use of Finders

Securities firms often "borrow" securities from another firm for a number of reasons.[1]  Other firms "lend" securities. In a borrowing and lending transaction, the borrower will give the lending firm cash collateral for the borrowed securities, which typically equals the cash value of the securities.  The lender can then earn interest on the cash collateral.  The parties then typically negotiate a "rebate" which is a spilt of the interest earned on that cash collateral and which depends on the availability of the particular security borrowed.  If the security is widely available, the lender will likely give a portion of the interest earned on the collateral back to the borrower.  If the security is scarce or "hard to borrow," the lender will typically keep all of the interest earned on the

---

[1] For example, a client may "short sell" a security and the firm may need to cover the short position in the first instance by borrowing that stock from another firm.

collateral and the borrower will also have to pay an additional sum, known as a "negative rebate," to the lender.

Finders were third-parties to a stock loan transaction. A legitimate finder would give lenders and borrowers of securities genuine assistance in locating counter-parties and in putting together transactions. Finders earned money by being paid a portion of the rebate or negative rebate on the particular deals that they put together.

2.   The Civil Defendants' Fraudulent Conduct

The SEC alleges that the Civil Defendants used the payment of rebates and negative rebates to finders simply as a means of stealing money or paying bribes and kickbacks.

In the typical scheme, a corrupt stock-loan trader paid sham finder fees to a finder who had done nothing to earn those fees, as a way for the trader to enrich himself (where the finder was, in fact, the trader using a corporate nominee, or where the finder paid a kickback to the trader) or as a way to steal money and enrich the trader's family members (where, for example, the finder was a member of the trader's family and did nothing to earn the proceeds of the fraud).

In more complex schemes, a corrupt stock-loan trader directed business to another firm that paid finders, in exchange for kickbacks. Thus, the trader directed the second firm to pay a designated finder on the deal for no legitimate services. Once

again, the finder fees were a way for the trader to enrich himself (through kickbacks from the finder) or to enrich himself or his family members (again where the finder was the trader's own nominee or was a family member who has done nothing to earn the fees).

    3.   <u>The Civil And Criminal Matters</u>

On May 27, 2008, the government unsealed an indictment in the Criminal Case against KEN SUAREZ and GILBERT BEITAL. On September 24, 2008, the SEC filed its complaint in the Civil Case. The criminal indictment and civil complaint allege that several individuals violated the federal securities laws by participating in the fraudulent scheme described above. SUAREZ and BEITAL have been named as defendants in both the Civil Case and the Criminal Case. A federal grand jury in this district is also conducting an ongoing investigation of, among other things, the participation of other unindicted individuals in the illegal conduct that is the subject of the Civil and Criminal Cases.

ARGUMENT

POINT ONE

INTERVENTION IS APPROPRIATE

Rule 24(a) of the Federal Rules of Civil Procedure provides that a party may intervene as of right in an action when he "claims an interest related to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. Proc. 24(a)(2). Rule 24(b) alternatively permits permissive intervention "when [the] applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. Proc. 24(b)(2). As described below, intervention is warranted here under both Rule 24(a) and Rule 24(b).

When government prosecutors have advised courts that they are conducting criminal prosecutions or investigations of individuals involved in a pending civil action, the courts have regularly permitted the government to intervene to request a stay of proceedings or discovery in the ongoing civil cases. See, e.g., SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988); SEC v. Doody, 186 F. Supp.2d 379, 381 (S.D.N.Y. 2002); Bridgeport Harbour Place I, LLC, 269 F. Supp.2d 6, 8 (D. Conn. 2002); SEC v. Downe, No. 92 Civ. 4092 (PKL), 1993 WL 22126 at *11 (S.D.N.Y.

Jan. 26, 1993); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992). Allowing the government to intervene in this case under Rule 24 is appropriate.

Intervention is warranted as a matter of right under Rule 24(a)(2) in light of the strong interest of the government and the public in the enforcement of criminal laws. See, e.g., Cascade Nat. Gas v. El Paso Nat. Gas Co., 386 U.S. 129, 132-36 (1967) (permitting intervention as of right by State in antitrust proceedings because of public interest in effective competition); SEC v. Realty & Improvement Co., 310 U.S. 434, 458-60 (1940) (SEC should have been permitted to intervene in bankruptcy proceeding because resolution of that proceeding might "defeat the public interests which [the SEC] was designated to represent"). That interest may be substantially impaired if civil proceedings were allowed to continue in this matter before the resolution of the Criminal Case and ongoing grand jury investigation, as explained further in Point II below.

Courts have specifically recognized that the government "has a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." Chestman, 861 F.2d at 50; see Morris v. Am. Fed'n of State, County & Mun. Employees, No. 99 Civ. 5125 (SWK), 2001 WL 123886 at *1 (S.D.N.Y. Feb. 9, 2001) (permitting the District Attorney

8

to intervene in civil action to request stay of discovery); <u>Bd. of Governors of the Fed. Reserve Sys. v. Pharaon</u>, 140 F.R.D. 634, 638 (S.D.N.Y. 1991) (same); <u>First Merchs. Enter., Inc. v. Shannon</u>, No. 88 Civ. 8254 (CSH), 1989 WL 25214 at *2-*3 (S.D.N.Y. Mar. 16, 1989) (allowing the United States Attorney to intervene in a civil action).

Intervention is also warranted as an exercise of this Court's discretionary authority because there is substantial overlap in the core factual allegations underlying this action and the factual questions that likely will be resolved in the criminal matters--namely, whether the defendants charged in both the Civil and Criminal Case schemed to violate the securities laws and defraud the investing public and others.  The government seeks only a stay of the proceedings, and its intervention will not alter the parties' respective positions.  In fact, the criminal prosecutions may benefit the civil parties, by bringing out facts relevant to the Civil Case and streamlining the ensuing litigation.  Accordingly, this Court should permit the government to intervene.

POINT TWO

STAY OF CIVIL PROCEEDINGS SHOULD BE GRANTED

District courts have the inherent authority to stay their own civil proceedings. See Landis v. N. Am. Co., 299 U.S. 248 (1936). A stay of proceedings and discovery in a civil case is particularly appropriate when, as here, a criminal indictment or information has been filed. See Doody, 186 F. Supp. 2d at 381 ("Once an indictment has been returned, the government often moves for and frequently obtains relief preventing a criminal defendant from using parallel civil proceedings to gain premature access to evidence and information pertinent to the Criminal Case."); Twenty First Century Corp., 801 F. Supp. at 1011 ("[C]ourts are more likely to grant [a stay] when an indictment has already been issued."). Pursuant to this discretionary authority, courts may decide to stay civil proceedings, postpone civil discovery, or impose protective orders. See SEC v. Dressler, 628 F.2d 1368, 1375 (D.C. Cir. 1980).

In making the determination whether to exercise its discretion to stay the civil proceedings, the Court should balance the following considerations:

> (1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; and (4) the interest of persons not parties to

>   the civil litigation; and (5) the public
>   interest.

Twenty First Century Corp., 801 F. Supp. at 1010 (citations and quotations omitted).

As described below, each of these factors weighs in favor of granting a stay of civil proceedings in the Civil Case until the conclusion of the criminal prosecutions.

   A.   The Civil Parties Will Not Be Prejudiced by
        the Proposed Stay

None of the parties to Civil Case object to the entry of a stay of civil proceedings in the Civil Case, and the SEC takes no position on the matter.  This is not surprising, given the significant resources that the parties stand to save by allowing the Criminal Case and ongoing grand jury investigation to proceed unencumbered by the burdens of civil proceedings and discovery.  As described above, two of the four individual civil defendants have been charged and pleaded guilty in the Criminal Case.  Thus, it is very likely that they will not proceed to trial in the Civil Case.  See SEC v. Freeman, 290 F. Supp. 2d 401, 405 (S.D.N.Y. 2003) ("It is settled that a party in a civil case may be precluded from relitigating issues adjudicated in a prior criminal proceeding and that the Government may rely on the collateral estoppel effect of the conviction in support of establishing the defendant's liability in the subsequent civil action.").

11

In addition, any of the Civil Defendants who is the target of a grand jury investigation is also likely to choose to assert his Fifth Amendment rights against self-incrimination in the Civil Case. Such an assertion would permit the Court in this civil action to make an adverse inference against him, a circumstance surely against his interests. Similarly, it would be unfair to permit these Civil Defendants to obtain discovery while not requiring that they provide the same. A stay would also be likely to streamline discovery for the SEC and any of the Civil Defendants who remains in the Civil Case after the conclusion of the criminal proceedings. See Twenty First Century Corp., 801 F. Supp. at 1011 (Noting that civil discovery due to pending criminal action "may streamline later civil discovery since the transcripts from the criminal case will be available to the civil parties."). The SEC and the Civil Defendants will therefore benefit from, as opposed to be prejudiced by, a stay of proceedings and discovery in the Civil Case.

B.   The Court Will Not Be Inconvenienced If It Stays Proceedings in the Civil Case

The Court will not be inconvenienced as a result of the stay. To the contrary, as stated above, the Criminal Case has already greatly streamlined the Civil Case. A stay of civil proceedings is also likely to narrow or eliminate factual issues in the civil litigation. See, e.g., In re Grand Jury Proceedings, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although

12

stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); United States v. Mellon Bank, 545 F.2d 869, 873 (3rd Cir. 1976) (affirming a stay of discovery and stating: "it might well have been that resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case."); Brock v. Tolkow, 109 F.R.D. 116, 119-20 (E.D.N.Y. 1985) (in granting a stay, noting that "the resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues."). All of this will save the Court's time and resources when the civil proceedings stay is lifted at the conclusion of the related criminal matters.

Indeed, in a related civil case, SEC v. Robert Durant, et al., 08 CV 1539 (JG) (the "Durant Civil Case"), which is about the same corrupt practices in the stock-loan industry, Your Honor, by order dated September 4, 2008, granted the government's application to intervene and stay the civil proceedings.

C.   A Stay Will Prevent Unfair Prejudice to the Government

A stay of the civil proceedings is appropriate to prevent criminal defendants from taking unfair advantage of broad civil discovery rules, to the detriment of the government and its witnesses. The Second Circuit Court of Appeals has recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to

13

circumvent the more limited scope of discovery [available] in [a] criminal matter." Chestman, 861 F.2d at 50.

The vastly different rules that apply to discovery in civil and criminal cases are important reasons for staying civil proceedings and discovery in cases where there are parallel criminal proceedings. See Bridgeport Harbour Place I, LLC, 269 F. Supp. 2d at 10 ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and those of a defendant in a criminal case."); Twenty First Century Corp., 801 F. Supp. at 1010 (granting stay, in part, because "[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules"). Unlike in a civil case, criminal defendants ordinarily are not entitled to depose prosecution witnesses, much less engage in the type of far-ranging inquiry permitted by the civil rules. See, e.g., Fed. R. Crim. Proc. 15(a). Nor are they able to obtain documents reflecting prior statements of witnesses before trial. See 18 U.S.C. § 3500; Fed. R. Crim. Proc. 16(a). Likewise, the criminal discovery rules require production only of those documents which the government intends to offer at trial, or which are material to the defense. See Fed. R. Crim. Proc. 16(a)(1)(C).

Discovery in criminal cases is narrowly circumscribed for important reasons entirely independent of any generalized

policy of restricting the flow of information to defendants. Three major reasons regularly identified by the courts in justifying narrow criminal discovery are that:

> (1) the broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence; (2) the revelation of the identity of prospective witnesses may create the opportunity for intimidation; and (3) the criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

Nakash v. U.S. Dep't of Justice, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988); see also Campbell v. Eastland, 307 F.2d 478, 487 n.12 (5th Cir. 1962); Raphael v. Aetna Cas. & Sur., 744 F. Supp. 71, 75 (S.D.N.Y. 1990).

These dangers are especially acute here because some potential witnesses in the Civil Case, have pleaded guilty to criminal charges and entered into cooperation agreements with the government. Moreover, the identities of the cooperating witnesses are not a matter of public record. Allowing discovery to proceed in the Civil Case could result in the premature disclosure of the identities of these cooperating witnesses. The cooperating witnesses also retain their Fifth Amendment privilege against self-incrimination.[2] It would be unfair to the

---

[2] See Mitchell v. United States, 526 U.S. 314, 323-24 (1999) (even defendants who have pled guilty retain Fifth Amendment rights prior to sentencing); SEC v. Malden, No. 89 Civ.

government to permit a party to the civil litigation to manufacture impeachment material by allowing civil depositions to be conducted when government witnesses may be forced to assert their Fifth Amendment rights.

Discovery of the notes of interviews of government witnesses, or the taking of such witness' depositions, would also undoubtedly provide information not discoverable in the criminal prosecution, and shed light on the strategies and progress of the ongoing grand jury investigation as well as any resulting prosecution, thus enhancing the ability to manufacture evidence or tailor testimony, and otherwise severely hamper the government's ability to conduct an orderly investigation and prosecution. The requested stay, on the other hand, would for the most part eliminate the possibility that such dangers will be realized.

D.  A Stay Would Serve the Public Interest in Law Enforcement

It is well-settled that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." Campbell, 307 F.2d at 487; see also In re Ivan F.

---

0572 (JFK), 1991 WL 270116 at *3-*4 (S.D.N.Y. Dec. 9, 1991) (noting that a cooperating individual faces the possibility of criminal charges from other law enforcement authorities and for other criminal activity related to his cooperation).

16

Boesky Sec. Litig., 128 F.R.D. 47, 48 (S.D.N.Y. 1989). Indeed, one court has observed that "where both civil and criminal proceedings arise out of the same or related transactions, the government is ordinarily entitled to a stay of all discovery in the civil action until disposition of the criminal matter." United States v. One 1964 Cadillac Coupe DeVille, 41 F.R.D. 352, 353 (S.D.N.Y. 1966).

Stays of proceedings and discovery in civil actions reflect a recognition of the vital interests at stake in a criminal prosecution. See, e.g., United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution"). Stays have been granted to halt civil litigation that threatened to impede criminal investigations which had yet to yield an indictment. For example, stays have been granted to avoid interference in investigations relating to tax fraud, see, e.g., Campbell, 307 F.2d at 480, insider trading, see, e.g., Chestman, 861 F.2d at 50; Downe, 1993 WL 22126 at *1, insurance fraud, see, e.g., Raphael, 744 F. Supp. at 73, bank fraud, see, e.g., Pharaon, 140 F.R.D. at 639, customs violations, see, e.g., R.J.F. Fabrics, Inc. v. United States, 651 F. Supp. 1437 (U.S. Ct. Int'l

17

Trade 1986), and immigration fraud, see, e.g., Souza v. Shiltgen, No. C-95-3997 MHP, 1996 WL 241824 at *1 (N.D. Cal. May 6, 1986).

     A stay is especially appropriate here because two of the four individual defendants in the Civil Case have pleaded guilty for engaging in the same activities that are the subject of that lawsuit.  The prosecution in this case will therefore vindicate substantially the same public interest underlying the SEC's civil action, namely preventing corporate securities fraud. See, e.g., Volmar Distrib., Inc. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (criminal prosecution would serve to advance public interest in preserving integrity of competitive markets).

     In sum, the interests of the public, the government, the parties, and the Court strongly weigh in favor of granting this stay motion.  In the interests of permitting the government to complete its prosecution in the Criminal Case, as well as the ongoing grand jury investigation, the government respectfully requests that its motion for a stay of civil proceedings in the Civil Case be granted.

CONCLUSION

For the foregoing reasons, the government's motion to intervene and for a stay of proceedings in this civil action should be granted.

Dated:   Brooklyn, New York
         October 24, 2008

                                      Respectfully submitted,

                                      BENTON J. CAMPBELL
                                      United States Attorney
                                      Eastern District of New York

                        By:        /s/
                                        Winston M. Paes
                                      Assistant U.S. Attorney
                                      (718) 254-6023